UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ANTHONY BARILLA,<br><br>    Plaintiff,<br>v.<br><br>CITY OF HOUSTON, TEXAS,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)  Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>) |

PLAINTIFF ANTHONY BARILLA'S
COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND NOMINAL DAMAGES (42 U.S.C. § 1983)

INTRODUCTION

1.      This First Amendment lawsuit challenges a city ordinance that unconstitutionally restricts musicians from busking (performing music in public for tips) on the streets of Houston, Texas. Plaintiff Anthony ("Tony") Barilla, a professional musician, wants to busk as an accordionist in Houston. But HOUSTON, TEX., CODE art. I, § 28-6 prohibits playing music "with the view of taking up [money]," everywhere but a small part of the City known as the Theater District, and only then after obtaining a permit that contains a "Heckler's Veto" provision. Tony challenges Houston's busking ban and permit requirements, HOUSTON, TEX., CODE art. I, § 28-6, art. XI, div. 2, §§ 40-262, 40-263(3), as a violation of the First Amendment's Free Speech Clause.

JURISDICTION AND VENUE

2.      Plaintiff brings this civil rights lawsuit pursuant to 42 U.S.C. § 1983, for violation of rights secured by the First Amendment to the U.S. Constitution, as applied to the states by the Fourteenth Amendment.

1

3.      This Court has jurisdiction over this action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1343 (civil rights jurisdiction), and 2201–02 (the Declaratory Judgment Act).

4.      Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b), on the grounds that all or a substantial part of the acts giving rise to Plaintiff's claims have occurred or will occur in the Southern District of Texas (*see* 28 U.S.C. § 124(b)(2)).

## PARTIES

5.      Plaintiff Tony Barilla is a United States citizen and a resident of Houston, Texas. Tony is a professional writer and accordionist. He wishes to play music for tips on Houston's public streets, but the City's busking restrictions prevent him from doing so.

6.      Defendant City of Houston is a municipality of the State of Texas. A municipality is a "person" subject to suit under 42 U.S.C. § 1983. *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979). The City and its agents are responsible for implementing and enforcing the busking ordinance at issue.

## FACTUAL ALLEGATIONS

### The Challenged Law and its Enforcement

7.      HOUSTON, TEX., CODE art. I, § 28-6, makes it unlawful to busk (perform music in public for tips) in the majority of the City.[1] It relegates busking to the limited area of the City's Theater District, where performers can play only after securing a permit.[2]

---

[1] "The playing of bands upon the streets or in other public places in the city, with a view to taking up a collection from the bystanders by someone, for the benefit of the members composing such band, shall be a nuisance and unlawful." HOUSTON, TEX., CODE art. I, § 28-6.

[2] "Every member of such band who plays with a view to taking up or having taken up a collection from the bystanders shall be guilty of committing a nuisance; provided, however, this section shall not be construed to apply . . . to sidewalk performers performing within the 'theater/entertainment

8.      The "theater/entertainment district" is defined as "the area including to the mid-point of and bounded by Preston Street on the north, Dallas Street on the south, Milam Street on the east, and Interstate Highway 45 on the west." HOUSTON, TEX., CODE art. XI, div. 1, § 40-261(b).

9.      The City of Houston is 665 square miles, and the Theater District covers a mere 8 blocks. This extremely limited area excludes many of Houston's dynamic cultural centers that lend themselves to busking. A map outlining the Theater District is attached as Exhibit A.

10.      HOUSTON, TEX., CODE art. XI, div. 2, § 40-262, requires buskers to obtain a permit before performing in the Theater District.

11.      Performers must obtain a permit regardless of whether they perform solo, or with others in a band or in a group, and regardless of how many people they intend to, or eventually do, attract.

12.      To obtain a permit, a performer must submit an application and pay a fee—$10 for 30 days and $50 for a year.

13.      The permit application must designate a single site within the district for the duration of the permit.[3] HOUSTON, TEX., CODE art. XI, div. 2, § 40-263(2). Performers may not stray from that site while performing until they apply for another permit.

14.      As a condition of submitting an application and receiving a permit, artists must also obtain written permission from the abutting property owners of the site where they intend to play. *Id.* at § 40-263(3). Hence, whether an applicant is able to obtain a permit and exercise his

---

district' defined in section 40-261 of this Code pursuant to a permit issued under article XI of chapter 40 of this Code." HOUSTON, TEX., CODE art. I, § 28-6.

[3] The applicant may designate a daytime site and a nighttime site. HOUSTON, TEX., CODE art. XI, div. 2, § 40-263(2).

right of free speech depends on the whims of a few people, who together enjoy a "Heckler's Veto" over that speech. This limitation, like all of the busking restrictions, does not apply to other speakers, like protestors or panhandlers.

15.     Any person who busks outside of the Theater District, or without a permit inside the District, is subject to a fine not exceeding $500 for each violation. HOUSTON, TEX., CODE ch. 1, § 1-6(a). Each day on which a musician busks in violation of the code constitutes a separate violation. *Id.*

**Tony Barilla**

16.     Tony Barilla is a Houston-based musician and accordionist. He composes, produces, and performs music. For over twenty years, Tony has written and recorded music for the nationally syndicated NPR podcast, *This American Life*. Tony released an album this past year, "A Record of Deported Persons," which features songs that were adapted from interviews with people who have been deported from the United States.

17.     Tony busks as a means of improving his musicianship and performance skills while getting paid to perform. He believes busking is important to a city's culture. He wants to perform both as a means of expressing his artistic skills and to earn extra income.[4]

18.     After navigating the disorganized permitting process,[5] Tony obtained a year-long permit in 2018 to busk in the Theater District.

19.     Tony has come to believe that the Theater District is not an opportune place to busk because it excludes cultural sites and other consistently trafficked areas that better lend

---

[4] Anthony Barilla, *Busking the Streets of Houston*, Houston Press (Sept. 17, 2018 4:00 AM), https://www.houstonpress.com/music/houstons-regulations-about-busking-10865671.

[5] Tony accessed a permit application after contacting three city departments—all of which seemed befuddled by his request for a permit application because they assumed busking was banned throughout the city and were unaware that such a permit existed for the Theater District.

themselves to busking.  The fact that Houston's busking law does not allow him to perform for tips in these other areas is one of the reasons Tony chose not to renew his permit when it expired in August of 2019.

20.     The Heckler's Veto provision has also dissuaded Tony from renewing his permit. That provision imposes several practical problems for permit applicants. It is difficult and sometimes impossible, for instance, to track down a property owner or the person authorized to give permission on behalf of the property owner. Individuals who feel uncomfortable asking for a stranger's permission, like Tony, may forgo busking altogether to avoid such discussions.

21.     Tony did not renew his permit after it expired. Tony believed that the restrictions on busking, including the fee, the small area of the Theater District, and the Heckler's Veto provision, made it not worthwhile for him to renew the permit.

22.     Because he no longer has a permit, Tony has stopped busking.

23.     But for the City's busking restrictions, Tony would busk again in Houston.

24.     An actual and substantial controversy currently exists between Tony and the City regarding the constitutionality of the busking restrictions. Tony contends that the busking restrictions are unconstitutional. Tony is informed and believes, and on that basis alleges, that the City contends that the busking restrictions are constitutional.

25.     Tony is unwilling to risk fines of up to $500 for violating the ordinance and, therefore, has refrained from busking since his permit expired. If the City's busking restrictions were declared unconstitutional and the City enjoined from enforcing them, Tony would resume busking on the streets of Houston.

26.     Tony has no plain, speedy, and adequate remedy at law for this violation of his right to free speech. Damages are indeterminate or unascertainable, and would not fully redress Tony's harm.

27.     Accordingly, injunctive and declaratory relief is appropriate.

## LEGAL CLAIM

### Violation of the First Amendment's Free Speech Clause

28.     Tony alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

29.     Tony's busking activity, consisting of playing music for monetary donations, is protected by the First Amendment.

30.     HOUSTON, TEX., CODE art. I, § 28-6, art. XI, div. 2, §§ 40-262, 40-263(3), restricts Tony's free speech rights in public places including sidewalks and streets, which constitute public forums.

31.     Houston's code allows some expression on its streets, but as soon as a person solicits tips while performing, he is banned from the vast majority of Houston's public sidewalks, relegated to one of the least lucrative parts of the City for busking, and subjected to a permitting scheme that includes a Heckler's Veto.

32.     Houston's busking restrictions draw a distinction between different types of speech depending upon the message conveyed.

33.     An official must examine the content of the speech to determine whether it is subject to the busking restrictions.

34.     Houston's busking restrictions are content-based restrictions on speech.

35.     Because Houston's busking restrictions are content-based, the law is subject to strict scrutiny.

36.     Houston's busking ban does not further any compelling, or even significant, government interest. There is no evidence that busking outside the Theater District would create a traffic hazard necessitating such a restrictive law. And the City cannot restrict speech merely because it does not like it.

37.     Even if the ban was aimed at a compelling purpose, it is not narrowly tailored because it restricts more speech than necessary and there are less restrictive means at the government's disposal.

38.     Houston's permitting requirement, HOUSTON, TEX., CODE art. XI, div. 2, § 40-262, imposes a prior restraint on Tony's speech.

39.     The prior restraint of Houston's permit requirement applies to single street performers, regardless of the crowd they draw.

40.     Houston cannot require individual speakers to obtain a permit before exercising their right to express themselves on public streets.

41.      Houston's permitting requirement does not further any compelling, or even significant government interest. In particular, the Heckler's Veto provision serves no purpose except for the illegitimate purpose of censoring disfavored speech.

42.      Tony has been suffering and will continue to suffer substantial and irreparable harm unless Houston's busking restrictions including its permit requirement are declared unlawful and enjoined by this Court.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

1.     an entry of judgment declaring that HOUSTON, TEX., CODE art. I, § 28-6, art. XI, div. 2, §§ 40-262, 40-263(3) are unconstitutional under the First Amendment to the U.S. Constitution, facially and as applied to Plaintiff;

2.     an entry of a permanent injunction against Defendant, its employees, agents, assigns, and all persons acting in concert with it, from continuing to enforce HOUSTON, TEX., CODE art. I, § 28-6, art. XI, div. 2, §§ 40-262, 40-263(3), as well as any and all implementing administrative rules and regulations, and practices and policies by which Defendant enforces this provision, against Plaintiff or any other person;

3.     an award of nominal damages in the amount of $1;

4.     an award of attorney fees and costs in this action pursuant to 42 U.S.C. § 1988;

5.     an award of any further legal or equitable relief this Court may deem just and proper.

DATED: January 15, 2020.

Respectfully submitted,

s/ Mollie R. Williams
**MOLLIE R. WILLIAMS** (*Attorney in Charge*)
Cal. Bar No. 322970
Southern District of Texas No. 3495076
**ANASTASIA P. BODEN** (*of Counsel*)
Cal. Bar No. 281911
Southern District of Texas No. 3495077
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Fax: (916) 419-7477
Email: ABoden@pacificlegal.org
Email: MWilliams@pacificlegal.org

*Counsel for Plaintiff Anthony Barilla*

8

# EXHIBIT A

Case 4:20-cv-00145   Document 1   Filed on 01/15/20 in TXSD   Page 9 of 10

