# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| **ANTHONY BARILLA,** | ) **Civil Action No. 4:20-CV-00145** |
| | ) |
| **Plaintiff,** | ) **Honorable Judge** |
| **v.** | ) **Alfred H. Bennett** |
| | ) |
| **CITY OF HOUSTON, TEXAS,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |
| | ) |

## PLAINTIFF ANTHONY BARILLA'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ 2

MOTION FOR SUMMARY JUDGMENT ..................................................................... 4

INTRODUCTION ........................................................................................................... 4

STATEMENT OF FACTS ............................................................................................... 4

SUMMARY OF ARGUMENT ....................................................................................... 6

LEGAL STANDARDS ................................................................................................... 7

  1.  Summary Judgment ............................................................................................. 7

  2.  Standard of Review ............................................................................................. 7

ARGUMENT .................................................................................................................. 9

  I.  THE BUSKING BAN CANNOT SURVIVE STRICT OR INTERMEDIATE SCRUTINY ................................................................................................................. 9

    A.  The Government's Interests Are Neither Compelling Nor Significant ........................... 9

    B.  The Busking Ban Is Not Narrowly Tailored and Does Not Leave Open Ample Channels for Communication ........................................................................................... 12

      1.  The City has no evidence showing that the Busking Ban is narrowly tailored to achieve a compelling or significant government interest. ......................................... 12

      2.  The Busking Ban does not leave open ample alternative channels of communication. ....................................................................................... 16

II.   THE PERMIT SCHEME CANNOT SURVIVE STRICT OR INTERMEDIATE
      SCRUTINY............................................................................................................. 16

      A.   The Permit Scheme Is Presumptively Unconstitutional.................................. 16

      B.   The Permit Scheme Fails Under Both Strict and Intermediate Scrutiny........ 17

           1.   The City has no evidence that the Permit Scheme is narrowly tailored to achieve a
                compelling or significant government interest ......................................... 17

           2.   The Permit Scheme leaves open no ample alternative channels of communication .. 19

CONCLUSION............................................................................................................... 20

CERTIFICATE OF SERVICE ........................................................................................ 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American-Arab Anti-Discrimination Comm. v. City of Dearborn*,
      418 F.3d 600 (6th Cir. 2005) ...........................................................................17

*Ass'n of Club Executives of Dallas, Inc. v. City of Dallas*,
      No. 22-0177, 2022 WL 1642470 (N.D. Tex. May 24, 2022) .................................13

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963).......................................................16

*Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009)...................................... *passim*

*Bery v. City of New York*, 97 F.3d 689 (2d Cir. 1996)......................................15, 16, 19

*Blitch v. City of Slidell*, 260 F. Supp. 3d 656 (E.D. La. 2017)..............................10, 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................................7

*Clark v. Community for Creative Non-Violence*,
      460 U.S. 280 (1984)...........................................................................................9

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
      657 F.3d 936 (9th Cir. 2011) ..........................................................................15

*Cox v. City of Charleston*, 416 F.3d 281 (4th Cir. 2005)................................................17

*Davenport v. City of Alexandria*, 710 F.2d 148 (4th Cir. 1984)..........................13, 14

*Davenport v. City of Alexandria*, 748 F.2d 208 (4th Cir. 1984)....................................14

*Douglas v. Brownell*, 88 F.3d 1511 (8th Cir. 1996) ......................................................17

*Forsyth Cnty. v. Nationalist Movement*, 505 U.S 123 (1992)...........................................7

*Freedman v. Briarcroft Prop. Owners, Inc.*, 776 S.W.2d 212 (Tex. App. 1989)........................13

*Friedrich v. City of Chicago*, 619 F. Supp. 1129 (N.D. Ill. 1985)............................8, 11

*Frisby v. Schultz*, 487 U.S. 474 (1988)..........................................................................18

*Goldstein v. Town of Nantucket*, 477 F. Supp. 606 (D. Mass. 1979)......................12, 19

*Heffron v. Int'l Society for Krishna Consciousness, Inc.*,
452 U.S. 640 (1981)............................................................................................16

*Horton v. City of St. Augustine*, 272 F.3d 1318 (11th Cir. 2001) ...................................15

*Knowles v. City of Waco*, 462 F.3d 430 (5th Cir. 2006) ................................................16

*Loper v. New York City Police Department*, 999 F.2d 699 (2d Cir. 1993).....................8–9, 11, 14

*Martin v. City of Albuquerque*, 396 F. Supp. 3d 1008 (D.N.M. 2019)..........................13

*McCullen v. Coakley*, 573 U.S. 464 (2014) .............................................................12–13, 19

*Pence v. City of St. Louis*, 958 F. Supp. 2d 1079 (E.D. Mo. 2013) ..........................11, 18

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983)........................7

*Reed. v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015).....................................................7

*Reynolds v. Middleton*, 779 F.3d 222 (4th Cir. 2015)...................................................15

*Santa Monica Food Not Bombs v. City of Santa Monica*,
450 F.3d 1022 (9th Cir. 2006) ...........................................................................17

*Santopietro v. Howell*, 857 F.3d 980 (9th Cir. 2017) ...................................................9

*Schad v. Borough of Mt. Ephraim*, 452 U.S. 61 (1981)................................................16

*Schneider v. New Jersey*, 308 U.S. 147 (1939)..............................................................19

*Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011) ..........................................................7

*Thayer v. City of Worcester*, 144 F. Supp. 3d 218 (D. Mass. 2015)...............................15

*Universal Amusement Co., Inc. v. Vance*, 587 F.2d 159 (5th Cir. 1978), *aff'd*,
*Vance v. Universal Amusement Co.*, 445 U.S. 308 (1980) ......................................13

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ................................................7, 9

*Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton*,
536 U.S. 150 (2002)..........................................................................................16

*Wilson v. Tregre*, 787 F.3d 322 (5th Cir. 2015).............................................................7

*Young v. New York City Transit Auth.*, 903 F.2d 146 (2d Cir. 1990) ...........................17

**Houston, Texas Code of Ordinances**

Houston, Tex. Code, ch.1, § 1-6(a)...................................................................................5

Houston, Tex. Code, ch. 28, art. I, § 28-6...........................................................4, 5, 8, 18

Houston, Tex. Code, ch. 30 § 30-2, *et seq.* (2022) ....................................................12, 19

Houston, Tex. Code, ch. 34 § 34-21.................................................................................19

Houston, Tex. Code, ch. 40, art. XI § 40-261(b)..........................................................8, 12

Houston, Tex. Code, ch. 40, art. XI, div. 2, § 40-262, *et seq* ......................................4, 5

Houston, Tex. Code, ch. 40 § 40-27 ................................................................................19

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Plaintiff Anthony Barilla moves this Court for Summary Judgment and an order declaring unconstitutional under the First Amendment to the U.S. Constitution Houston, Texas Code of Ordinances, ch. 28, art. I, § 28-6 and Houston, Texas Code of Ordinances, ch. 40, art. XI, div. 2, §§ 40-262–40-263(3) and enjoining enforcement thereof.

## INTRODUCTION

Anthony Barilla wants to earn extra money and practice his accordion and performance skills by busking in his hometown of Houston. However, he's deprived of his constitutional right to do so by a Houston law that bans busking throughout most of the city and imposes an onerous permit requirement where it is not banned. There is no dispute of any material fact here. Houston lacks any evidence that busking presents a threat to safety, and even if it possessed such evidence, its overly broad, burdensome busking restrictions are not narrowly tailored to any public safety end. Nor can the Houston Ordinance even satisfy intermediate scrutiny. Therefore, Barilla respectfully requests that this Court grant summary judgment in his favor.

## STATEMENT OF FACTS

Anthony Barilla is a long-time Houston resident and professional musician. Exh. A (Barilla Decl.) ¶¶ 1, 2. He is the Executive Director of a chamber music ensemble in Houston, as well as an active freelance accordionist. Barilla Decl. ¶ 3. Mr. Barilla plays in several bands, one of which performs live shows in Houston; he records in studio with the others. Barilla Decl. ¶ 4. Some of his music contains a political component. Barilla Decl. ¶ 5. Barilla would like to busk in his hometown, but Houston bans busking in the majority of the City ("Busking Ban"). Exh. B (Houston, Tex. Code, ch. 28, art. I, § 28-6). It relegates busking to a relatively small area called the Theater/Entertainment District, where performers can play only after securing a permit

("Permit Scheme"). *Id.*, ch. 40, art. XI, div. 2 § 40-262. To secure a permit and exercise their First Amendment rights, would-be buskers must provide: (1) a map showing the desired location(s) for 24-hour use, § 40-263; (2) "written permission of the abutting fee owner for the use of the site," § 40-263(3); and (3) a description of the intended performance, § 40-263(5). Performer permit fees are $50 for one spot for one year, § 40-264(3), or $10 for one spot for one month. § 40-264(4). Permits can take up to ten days to issue. § 40-265(a). Each violation of either the Busking Ban or the permit restrictions is subject to a fine of up to $500. Houston, Tex. Code, ch.1, § 1-6(a).

The Busking Ordinance applies specifically to those who perform in public places "with a view to taking up or having taken up" monetary donations. Houston, Tex. Code, ch. 28, art. I, § 28-6. It does not apply to one who performs without asking for money or who solicits donations without performing. Exh. C (Wallace-Brown Dep.) 50:22–51:16, 61:20–22.

In 2018, Mr. Barilla decided to try his hand at busking as a means of practicing his live performance and musicianship skills and earning extra money. Barilla Decl. ¶ 8. After researching, he learned that busking was illegal in all but Houston's Theater/Entertainment District. Barilla Decl. ¶ 9. After making several attempts to locate the owners of the properties abutting his desired busking spot, he obtained their permission to busk. Barilla Decl. ¶ 10. In August 2019, Mr. Barilla obtained a one-year permit to busk at a single spot in the Theater/Entertainment District. Barilla Decl. ¶ 11.

Mr. Barilla's chosen busking spot turned out to be not very lucrative since so few pedestrians passed through the Theater/Entertainment District. Barilla Decl. ¶ 13. Since the permit was for one specific spot, a new spot would require repeating the permit process. In his experience as a long-time Houston resident and patron of local culture and the arts scene, Mr. Barilla has observed that there are much better places to busk in Houston that are outside of the

Theater/Entertainment District. Barilla Decl. ¶¶ 14, 15. Once his permit expired in August 2019, Mr. Barilla decided not to renew it, in part because it didn't pay for itself and in part because he found it not only difficult but also uncomfortable to ask for permission to exercise his First Amendment rights from abutting property owners. Barilla Decl. ¶¶ 16, 17. However, if busking were legal throughout Houston without burdensome permit requirements, he would busk again. Barilla Decl. ¶ 19. As it stands, he does not want to risk breaking the law. Barilla Decl. ¶ 18.

## SUMMARY OF ARGUMENT

Houston's broad Busking Ordinance violates the First Amendment. First, the Ordinance's restrictions constitute a content-based restriction on speech. The restrictions plainly apply based on the subject matter and purpose of a street performer's message, *i.e.*, whether they wish to receive gratuities or donations. Conversely, the restrictions do *not* apply to people who solicit tips but do not street perform. The Ordinance is therefore content-based and subject to strict scrutiny.

Second, the restrictions cannot meet that demanding standard. The City has put forward two justifications for its laws: (1) traffic and pedestrian safety and (2) the need to protect nearby businesses from unwanted sounds. Both justifications ring hollow, as the City has not come forward with any evidence to substantiate their asserted concerns.

Third, even if this Court deems the City's interests "compelling," the Ordinance still fails under strict scrutiny because neither the broad Busking Ban nor the Permit Scheme are narrowly tailored to serve those interests. This is revealed by the City's failure to produce *any* evidence that it has employed the least restrictive means to achieve its goals.

Even if the Court were to determine that the Ordinance is content-neutral and subject to intermediate scrutiny, the Ordinance still must fail because the City has proffered no evidence that

the law is narrowly tailored to serve significant government interests, and it leaves open no ample alternative channels of communication for buskers.

## LEGAL STANDARDS

### 1. Summary Judgment

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (quoting Rule 56(a)). Where the nonmoving party bears the burden of proof on an issue at trial, the movant need only point to the absence of evidence, shifting the burden to the nonmoving party to show why summary judgment should not be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Defendant has the burden of presenting specific evidence that a prior restraint on freedom of expression is constitutional. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

### 2. Standard of Review

The First Amendment protects expressive activity, such as busking, in public fora. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Because it is a content-based restriction on speech, the challenged Busking Ordinance must be reviewed under strict scrutiny. *Forsyth Cnty. v. Nationalist Movement*, 505 U.S 123, 134 (1992). A law is content-based when it applies to particular speech due to the idea or message expressed or the topic discussed. *Reed. v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). Courts determine whether a restriction is content-based by considering whether, on its face, it draws distinctions based on the message a speaker conveys. *Id.* (citing *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 564–66 (2011)). Even facially neutral regulations of speech will be considered content-based if they cannot be applied without making reference to the content of the regulated speech. *Id.* at 164.

The Busking Ordinance here is content-based because it regulates the content of speech by both its subject matter and its purpose; in order to determine whether the Ordinance applies, the content of a person's speech must be examined. The Ordinance applies to "performers," defined as "musicians, singers, mimes, and other artists." Houston, Tex. Code, ch. 40, art. XI § 40-261(b). It does not apply to street preachers holding religious services, for example. Houston, Tex. Code, ch. 28, art. I § 28-6. Nor does it apply to other First Amendment street activity, such as pamphleteering or protesting. Further, the Ordinance doesn't even apply to all performers; it only applies to those who wish to receive gratuities. *Id.* (Ordinance regulates performers who perform "with a view to taking up gratuities or having taken up a collection from the bystanders"); *see also* Houston, Tex. Code, ch. 40, art. XI § 40-261(b) (referring to performers who "perform for gratuities on the sidewalk"). Defendant's own admission confirms this. Wallace-Brown Dep. 38:23–25, 39:1–2 ("Q: Okay. Do you know if the busking ban applies to someone who performs on the public sidewalks in Houston if they don't ask for or receive tips? A: I assume that it does not apply . . . . I think the key is asking for and receiving tips."); *id.* at 50:22–51:16. Thus, the combination of street performance plus communicating a message that one is open to gratuities triggers the Ordinance.

Because the Ordinance "specifically restricts street performers from communicating a particular set of messages—[such as] requests for donations," it is "content-based by its very terms." *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009). *See also Friedrich v. City of Chicago*, 619 F. Supp. 1129, 1142 (N.D. Ill. 1985) ("The restriction[] at issue . . . is not neutral with respect to the type of speaker, since it does not embrace many other classes of speakers and 'performers'. . . ."); *Loper v. New York City Police Department*, 999 F.2d 699, 705 (2d Cir. 1993)

(holding that a city ordinance enacted a content-based restriction on speech because it prohibited speech related to begging).

In *Berger*, a street performer challenged rules restricting performances in a public park on the basis that they violated the First Amendment. *See* 569 F.3d at 1034. The city of Seattle had passed an ordinance that, among other restrictions, banned "active" solicitation of funds by street performers in the public park. *Id.* The court held that the ban on active solicitation was a content-based restriction on speech meriting strict scrutiny. *Id.* at 1051. It reasoned that the city's rules specifically restricted street performers from communicating the particular message of a request for donations. *Id.* Here, the busking restrictions apply *only* when a street performer conveys the specific message of a desire for tips. Street performers are otherwise free to communicate their non-solicitation ideas. Thus, the Ordinance enacts a flagrant, content-based restriction on speech that should be reviewed under strict scrutiny. *See also Santopietro v. Howell*, 857 F.3d 980, 988 (9th Cir. 2017).

However, if this Court determines that the Ordinance is a content-neutral time, place, and manner restriction, it should apply intermediate scrutiny. *Ward*, 491 U.S. at 791. Under that standard, the City still carries the burden of presenting specific evidence that the restrictions are narrowly tailored to serve a significant government interest and that no ample alternative channels of communication are available. *Id.* (quoting *Clark v. Community for Creative Non-Violence*, 460 U.S. 280, 293 (1984)). Even under intermediate scrutiny, Defendant cannot meet its burden, and summary judgment for Plaintiff must be granted.

## ARGUMENT

## I.   THE BUSKING BAN CANNOT SURVIVE STRICT OR INTERMEDIATE SCRUTINY

### A.   The Government's Interests Are Neither Compelling Nor Significant

Defendant has asserted only two concerns to justify banning busking throughout most of the City: (1) pedestrian and traffic safety and (2) protecting neighboring property owners from hearing things they might not want to hear. Wallace-Brown Dep. 21:23–25, 22:1–9, 29:7–18. Because Defendant has failed to substantiate either interest with evidence, both fail to rise to the level of a "compelling" or even "significant" government interest.

While in theory the safety of pedestrians and a community can serve as a compelling interest, *Blitch v. City of Slidell*, 260 F. Supp. 3d 656, 670 (E.D. La. 2017), the City has failed to substantiate its concern that busking presents a threat to public safety. While requested in discovery, Defendant has provided no responsive documents evidencing issues with traffic or pedestrian safety related to busking anywhere in Houston. Defendant's 30(b)(6) representative confirmed that there is no evidence that banning busking for money outside of the Theater/Entertainment District contributes to pedestrian or traffic safety. Wallace-Brown Dep. 22:24–25, 23:1–6 ("Q: What facts do you rely on to support the idea that busking on public sidewalks so interferes with this interest in traffic and pedestrian safety that it must be banned entirely? A: I don't have any facts associated with this . . . ."); *id.* at 26:16–22 ("Q: And do you have any evidence of buskers causing crashes more than anyone else or at all? A: I do not. . . . I'm not sure that even [something] you could analyze."); *id.* at 37:8–11 ("Q: Are you aware of any facts or evidence that any busker by virtue of busking in a public place in Houston has presented a danger to self or others? A: I am not aware of any, no."); *id.* at 37:12–15 ("Q: Are you aware of any facts or evidence that any busker by virtue of busking in a public place in Houston has presented a traffic problem or risk? A: I'm not aware of any."). When asked if she had any specific evidence or factual support for a concern about busking's effect on neighboring businesses, the City's representative replied, "[T]here are no facts we are relying on today because we're not doing

the analysis." Wallace-Brown Dep. 29:21–25, 30:1–5. In sum, the City has presented precisely no evidence of buskers causing traffic incidents, drawing large and/or dangerous crowds, or otherwise creating any threat to the public or neighboring businesses.

Perhaps most telling is what the Ordinance does *not* ban: street performers who entertain for free. Defendant has provided no evidence that those who perform *gratis* present fewer safety concerns than those who solicit or accept tips, or that they are any less likely to draw crowds and create safety concerns. *See Pence v. City of St. Louis*, 958 F. Supp. 2d 1079, 1085 (E.D. Mo. 2013). Arguably, performers who don't solicit tips might draw and keep *more* crowds around longer because observers may feel less pressure to donate money. That the Ordinance only bans the combination of street performance plus solicitation renders the City's asserted "safety" concern hollow. As the Second Circuit observed with respect to a ban on asking for money on public streets, "[I]t does not seem to us that any compelling state interest is served by excluding those who beg in a peaceful manner from communicating with their fellow citizens." *Loper*, 999 F.2d at 705. Likewise here, while Houston allows street performers who don't express a desire for donations to perform in public areas, it cannot plausibly assert that a compelling interest arises when those same performers peacefully solicit donations.

The City lacks any evidence that traffic or pedestrian safety was *ever* a concern with regards to busking, including at the time the ordinances were enacted. Wallace-Brown Dep. 27:2–5, 22–25, 28:1–4. But *even if* it is true that the original busking ban was passed in response to a safety problem, it is no longer true, as Defendant's failure to present evidence demonstrates. *See Friedrich*, 619 F. Supp. at 1147 (recognizing that a ban on street performances might have made sense during the heyday for breakdancing, but as that fad died, so did the city's compelling interest in safety and crowd control for a particular area).

11

The City's other asserted interest, in protecting neighboring property owners, also rings hollow. First, the City acknowledges that it lacks evidence of any facts supporting its claim that it needs to protect property owners from noise. Wallace-Brown Dep. 29:21–30:5. When asked to substantiate concern that busking interferes with neighboring property owners, the City's 30(b)(6) representative replied, "I can't tell you what the people [who] wrote the ordinance . . . relied on and we're not reviewing or analyzing this ordinance[] currently so there are no facts we are relying on today . . . ." Second, this unsubstantiated interest assumes that all buskers will be loud and distracting to ongoing businesses. However, even where busking is permitted in a small area of the Theater/Entertainment District, a performer cannot use amplification. Houston, Tex. Code, ch. 40, art. XI, § 40-261(b). Even if an unamplified performer was too loud, the City has existing noise ordinances at its disposal to control disturbances such as high decibel levels, type and constancy of unwanted sounds, and other distractions. Houston, Tex. Code, ch. 30, § 30-2, *et seq.* (2022). At its core, the City's interest in "protecting" property owners from sounds they don't want to hear amounts to nothing more than giving private citizens the power to censor others' speech— something the First Amendment does not tolerate. *Goldstein v. Town of Nantucket*, 477 F. Supp. 606, 609 (D. Mass. 1979).

**B.      The Busking Ban Is Not Narrowly Tailored and Does Not Leave Open Ample Channels for Communication**

**1.      The City has no evidence showing that the Busking Ban is narrowly tailored to achieve a compelling or significant government interest**

Even assuming this Court finds the City's asserted interests are sufficiently compelling or significant, the Busking Ban still must fall because it is not narrowly tailored. Under strict scrutiny, a narrowly tailored restriction on free expression must be supported by specific evidence that it is the "least restrictive" means of achieving the compelling state interest. *McCullen v. Coakley*, 573

U.S. 464, 478 (2014); *Blitch*, 260 F. Supp. at 670. *See also Ass'n of Club Executives of Dallas, Inc. v. City of Dallas*, No. 22-0177, 2022 WL 1642470, *8 (N.D. Tex. May 24, 2022). Even under intermediate scrutiny, a law may not burden substantially more speech than is necessary to further the government's interests. *McCullen*, 573 U.S. at 486. Both standards require the government to present "actual" non-speculative evidence that its restrictions are narrowly tailored to address its asserted interests. *Id.*; *Davenport v. City of Alexandria*, 710 F.2d 148, 152 n.8 (4th Cir. 1984) ("*Davenport I*") ("We realize that the detailed proof required . . . saddles the City with a heavy burden, but where freedom of expression is at stake, a governmental entity must always be prepared to come forward with a strong factual justification for its action."); *Martin v. City of Albuquerque*, 396 F. Supp. 3d 1008, 1029 (D.N.M. 2019) ("[T]he government must present case-specific evidence that the restriction actually serves the stated goal without burdening too much speech . . . ."). The Busking Ban is not narrowly tailored to any compelling or significant interest.

The City has produced *no* evidence that busking poses, or ever posed, a problem to traffic and pedestrian safety in Houston. Wallace-Brown Dep. 26:10–28:4, 37:8–20, 38:12–22. Additionally, by declaring busking to be a nuisance *per se* outside the Theater/Entertainment District, *i.e.*, at all times and under all circumstances, *Freedman v. Briarcroft Prop. Owners, Inc.*, 776 S.W.2d 212, 216 (Tex. App. 1989), the Busking Ban paints with far too broad a brush. It does not, for example, merely impose a volume limit or restrict the use of amplification, or even restrict music beyond certain hours. By definition, labeling speech as a nuisance *per se* is not narrowly tailored because it is a prior restraint on activities that may or may not actually interfere with a government's asserted interest in public health or safety. *See, e.g.*, *Universal Amusement Co., Inc. v. Vance*, 587 F.2d 159 (5th Cir. 1978), *aff'd*, *Vance v. Universal Amusement Co.*, 445 U.S. 308 (1980) (striking down on First Amendment grounds a statute declaring all adult theaters a nuisance

and requiring them to shut down for a year, prior to an actual judicial determination of "obscenity").

Further, the geographic reach of the busking ban is broader than necessary to promote any safety concerns. Where an ordinance "covers a broader geographical area than necessary to achieve the City's compelling interest in safety," it cannot be narrowly tailored. *Loper*, 999 F.2d at 705 ("[A] statute that totally prohibits begging in all places cannot be considered 'narrowly tailored.'").

In *Davenport I*, a street musician challenged a city ordinance prohibiting performances and exhibitions on the sidewalks, walkways, or other public property in the city's central business district. 710 F.2d at 148. The ordinance confined street performances to eight plazas and parks in the district. *Id.* at 150. The 9,880 acres lying outside of the business district were not subject to the ordinance's restrictions. *Id.* Although most of the city remained open to street performances, including parks and plazas *within* the district, the 4th Circuit affirmed the district court's determination—which was based on actual evidence of pedestrian and vehicle traffic rates and volumes, incidences of congestion and various times, sidewalk measurements, and typical and historical patterns of street performance audiences, among other things—that the ordinance was much more broad than necessary to satisfy the city's asserted interest in public safety. *Davenport v. City of Alexandria*, 748 F.2d 208, 210 (4th Cir. 1984) ("*Davenport II*"). Here, the Busking Ban is not only unsupported by evidence, but is also much more restrictive than the ordinance invalidated in the *Davenport* cases. In contrast to the vast areas left open for street performers to exercise their First Amendment rights, Houston's Busking Ban completely prohibits busking across most of the city. Absent any evidence demonstrating such an extensive ban is necessary to serve the City's alleged interests, the Ban cannot stand as the least restrictive means.

Several other circuits have struck down geographically smaller speech bans on more evidence than the City has proffered here. *See Reynolds v. Middleton*, 779 F.3d 222, 228–29 (4th Cir. 2015); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 940–41 (9th Cir. 2011) (striking down solicitation ban on any street or highway); *Bery v. City of New York*, 97 F.3d 689 (2d Cir. 1996) (invalidating a vendor license law that served as *de facto* ban on displaying expressive works in a particular area); *Thayer v. City of Worcester*, 144 F. Supp. 3d 218 (D. Mass. 2015) (striking down a ban on walking or standing on traffic islands and roadways).

Even where courts have upheld geographic restrictions on free expression as sufficiently narrowly tailored, the challenged laws leave open vast swaths of public spaces. *See Horton v. City of St. Augustine*, 272 F.3d 1318, 1334 (11th Cir. 2001); *see also Young v. New York City Transit Auth.*, 903 F.2d 146, 160 (2d Cir. 1990) (upholding a prohibition on panhandling in the subway system because soliciting money could continue "throughout all of New York City"). In *Horton*, a street performer challenged the constitutionality of an ordinance prohibiting street performances in a four-block area of the city's historic district. 272 F.3d at 1321. Applying intermediate scrutiny, the Eleventh Circuit upheld the restriction because the vast majority of the city's public spaces remained open to street performances. *Id.* at 1334. Notably, the ban at issue in *Horton* constitutes a mirror image of Houston's Ordinance here, where busking is banned everywhere *except for* the limited area in the Theater/Entertainment District. Unlike the ordinance in *Horton*, Houston's Busking Ban sweeps across most of the City's public spaces. "A complete ban can be narrowly tailored . . . only if each activity within the proscription's scope is an appropriately targeted evil." *Berger*, 569 F.3d at 1052 (cleaned up).

15

**2.      The Busking Ban does not leave open ample alternative channels of communication.**

Ultimately, the Busking Ban cannot survive even intermediate scrutiny because it also fails to leave open ample alternative channels of communication. *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 75–76 (1981). In order to satisfy this requirement, the challenged law must not obstruct access to a *public* forum for the protected activities. *Bery*, 97 F.3d at 698 ("The sidewalks of the City must be available for [artists] to reach their public audience."); *Heffron v. Int'l Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 655 (1981). Since the Busking Ban prohibits buskers from operating in the majority of Houston's public fora, and where it does allow busking, it does so under an unconstitutionally burdensome permit scheme, the Ban fails to leave open ample alternative channels for Mr. Barilla and other buskers to communicate their messages.

## II.      THE PERMIT SCHEME CANNOT SURVIVE STRICT OR INTERMEDIATE SCRUTINY

### A.      The Permit Scheme Is Presumptively Unconstitutional

Like the Busking Ban, the Permit Scheme cannot stand because (1) Defendant has offered no evidence that its asserted interests in safety and protecting businesses from noise are viable concerns; and (2) the permit requirements are not narrowly tailored to any compelling or significant government interest.

As a prior restraint on protected speech, the Permit Scheme is presumptively unconstitutional. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *see also Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150, 165–66 (2002) (calling permit requirements "offensive" to a free society and to the values protected by the First Amendment). Additionally, permit requirements, like those here, that apply to small groups and individuals in public fora are particularly suspect. *See Knowles v. City of Waco*, 462 F.3d 430, 436

(5th Cir. 2006) (invalidating a speech permit scheme that applied to groups as small as two people); *Berger*, 569 F.3d at 1039 ("[W]e and almost every other circuit to have considered the issue have refused to uphold registration requirements that apply to individual speakers or small groups in a public forum.") (citing *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022 (9th Cir. 2006); *Cox v. City of Charleston*, 416 F.3d 281 (4th Cir. 2005); *American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600 (6th Cir. 2005); *Douglas v. Brownell*, 88 F.3d 1511, 1524 (8th Cir. 1996) (expressing doubt that applying a permit requirement to a small group sufficiently served an interest in pedestrian safety or convenience)).

### B.  The Permit Scheme Fails Under Both Strict and Intermediate Scrutiny

#### 1.  The City has no evidence that the Permit Scheme is narrowly tailored to achieve a compelling or significant government interest

Beyond these initial hurdles, the permit requirements fail because they sweep too broadly while failing to advance the government's interests. *See Berger*, 569 F.3d at 1039. In *Berger*, the Ninth Circuit struck down a permit scheme that required street performers to obtain a permit for "artistic performances" in a public park in one of sixteen designated spaces. *Id.* at 1036–37. The permit requirement did not limit the number of permits issued in a given year or assign particular performers to specific spaces or times. *Id.* at 1037. The court held that the permit requirements were not narrowly tailored because they were both overbroad and underinclusive. They were overbroad because they enveloped a large number of street performers who posed no real threat to the defendant's traffic flow or space management concerns, just "to root out the occasional bad apple," *id*. at 1045–46; they were underinclusive because the permit requirements allowed massive crowds to gather and express their views so long as they were not engaged in artistic performance, *id.* at 1043. The Ninth Circuit found that this wildly imperfect fit between the restrictions and the

city's asserted interest in public safety did not satisfy the narrow tailoring requirement even under intermediate scrutiny. *Id.*

Like the unconstitutional permit requirements in *Berger*, Houston's Permit Scheme sweeps too broadly while failing to advance the government's interests. It applies beyond those performers who seek to attract large crowds or who otherwise pose a danger to pedestrian or traffic safety. In fact, whether a permit is required hinges only on whether the performer expresses a desire for money. Houston, Tex. Code, ch. 28, art. I, § 28-6. Defendant has not shown how a performer's intent to collect money impacts traffic safety or sidewalk congestion. Like the ordinance in *Berger*, Houston's busking ordinance would allow a large group of performers to gather without first securing a permit so long as they don't ask for money. But a single performer, like Mr. Barilla, would be required to seek a permit simply because he plans to solicit tips. This disparity in treatment based on a performer's intent to communicate a wish for tips makes no sense if the City's primary interest in requiring a permit is to ensure traffic and pedestrian safety. 569 F.3d at 1043. The City has produced no factual support for the assertion that a street performer who asks for tips causes any more congestion or safety issues than one who does not. *See Pence*, 958 F. Supp. 2d at 1085; *see Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (requiring a direct nexus between the restriction and "the 'evil' it seeks to remedy"). Indeed, Defendant's witness acknowledged as much. Wallace-Brown Dep. 50:18–25, 51:1–16.

Under the guise of unsubstantiated interests in "safety" and "protecting nearby businesses," the Permit Scheme burdens more speech than necessary by subjecting all buskers to the permit restrictions. For example, while it may be true that a busker *might* cause traffic or safety problems or *might* play music so loudly that it disturbs a business owner, such speculation cannot support subjecting *all* buskers to a prior restraint on their expression (one that doesn't even account for the

size of the crowd or the volume that is played). Any concerns the City might have about safety or noise disturbances can be addressed without burdening protected speech by enforcing existing city ordinances dealing with noise (*e.g.*, Houston, Tex. Code, ch. 30 § 30-2), crowd control (*e.g.*, Houston, Tex. Code, ch. 34 § 34-21), and obstructions on the sidewalks and roadways (Houston, Tex. Code, ch. 40 § 40-27); *McCullen*, 573 U.S. at 490. Rather than screen potential speakers in advance, the City could simply "punish[ ] only actual wrongdoers" after the fact. *Berger*, 569 F.3d at 1044. *See also Schneider v. New Jersey*, 308 U.S. 147, 162 (1939) (striking down pamphleteering law aimed at preventing littering). As it is, however, the permit requirements serve as an "expansive, prophylactic prior restraint," burdening far more speech than necessary. *Berger*, 569 F.3d at 1044.

While Defendant might argue that requiring a busker to obtain consent from a business owner creates a nexus to its interest in protecting the business owner, this argument withers on the vine. First, and most significantly, a law that allows one private citizen to determine whether another can exercise his First Amendment rights "is irreconcilable with freedom of expression. It is unqualified censorship and . . . just what the First Amendment forbids." *Goldstein*, 477 F. Supp. at 609. Under the broad terms of the Ordinance, a business owner of an abutting property could deny permission to a busker for *any* reason including disagreement with the busker's message or personal animus against the busker. These are intolerable bases for a restriction on free expression. In any event, as noted above, Defendant has come forth with *no evidence* that its "interest" in protecting business owners is a substantiated concern.

### 2. The Permit Scheme leaves open no ample alternative channels of communication

Like the Busking Ban, the City's Permit Scheme leaves open no ample channels of communication because it obstructs access to a public forum to allow buskers like Mr. Barilla to

reach their intended audience. *Bery*, 97 F.3d at 698. In particular, the City's single-location requirement is even more restrictive than those struck down in *Berger*. A busking permit is good for only one designated spot in the eight-block area of the Theater/Entertainment District. If a busker wishes to change location for any reason, he would have to start the permit application process anew. This restriction to a single location in the relatively small Theater/Entertainment District is not necessary to serve any government interest. Here, buskers face a Hobson's choice: they can busk in the Theater/Entertainment District under an unconstitutional permit scheme, or not at all. Thus, the Ordinance leaves them with no ample alternative channels of communication.

## CONCLUSION

Because Defendant City has failed to carry its burden of showing that the Busking Ordinance satisfies intermediate—much less strict—scrutiny, Plaintiff respectfully asks the Court to grant summary judgment in his favor.

DATED: June 21, 2022.

Respectfully submitted,

s/ Anastasia P. Boden
**ANASTASIA P. BODEN** (*Attorney in Charge*)
Cal. Bar No. 281911
Southern District of Texas No. 3495077
**JOSHUA W. POLK** (*of Counsel*) *
Cal. Bar No. 329205
**DONNA G. MATIAS** (*of Counsel*) *
Cal. Bar No. 154268
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
Fax: (916) 419-7747
Email: ABoden@pacificlegal.org
Email: JPolk@pacificlegal.org
Email: DMatias@pacificlegal.org
*Counsel for Plaintiff Anthony Barilla*
* *Pro hac vice*

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing was served by electronic

service through the Court's CM/ECF system on June 21, 2022, upon the following:

Patricia L. Casey
pat.casey@houstontx.gov
Brian A. Amis
brian.amis@houstontx.gov
Suzanne R. Chauvin
suzanne.chauvin@houstontx.gov
Lori Yount
lori.yount@houstontx.gov

CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby Street, 4th Floor
Houston, Texas 77002
Telephone: (832) 393-6466
Facsimile: (832) 393-6259

**Attorneys for Defendant, City of Houston**

s/ Anastasia P. Boden
**ANASTASIA P. BODEN**