United States District Court
Southern District of Texas
**ENTERED**
December 20, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTHONY BARILLA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-00145 |
| | § | |
| CITY OF HOUSTON, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are two motions: Plaintiff's Motion for Summary Judgment (Doc. #47), Defendant's Response (Doc. #52), and Plaintiff's Reply (Doc. #54); and Defendant's Motion for Summary Judgment (Doc. #48), Plaintiff's Response (Doc. #50), and Defendant's Reply (Doc. #53). Having reviewed the parties' arguments and applicable law, the Court grants in part Plaintiff's Motion for Summary (Doc. #47) and denies in part Defendant's Motion for Summary Judgment (Doc. #48).

**I.    Background**

    **a.    Factual Background**

Plaintiff Anthony Barilla, a longtime Houston resident, is a professional accordionist and writer. Doc. #1 ¶ 5. In 2018, Plaintiff hoped to perform on the streets of Houston to make some additional money and to practice his live performance skills. Doc. #47 at 5. Plaintiff learned that busking—performing music on the sidewalk and in public spaces for tips—is illegal in Houston per the Houston Code of Ordinances (the "Code"), Chapter 28, Article I, § 28-6 (the "Busking Ordinance"). *See id.*, Ex. 1 ¶ 8. The Busking Ordinance prohibits bands from busking, except if

performing with a permit in the Theater/Entertainment District ("Theater District") pursuant to Article XI, Chapter 40 of the Code. *See id.*, Ex. 2 at 2. Section 40-262 of Chapter 40, Article XI of the Code also prohibits sidewalk performances in the Theater District without a permit, *see* HOUS., TEX. CODE OF ORDINANCES, ch. 40, art. XI, § 40-262, and Section 40-263 outlines the requirements to receive said permit, *see* HOUS., TEX. CODE OF ORDINANCES, ch. 40, art. XI, § 40-263 (collectively, the "Permit Ordinances").

In August 2018, Plaintiff applied for and received a year-long permit to busk in the Theater District. Doc. #48, Ex. 7. Plaintiff legally busked in the spot designated by his permit but found that his chosen busking spot was not very lucrative because there were few pedestrians. Doc. #47 at 5. Plaintiff opted not to renew his permit when it expired in August 2019 because his "experiences busking in one spot in the [Theater District] did not pay for the time, expense, and hassle of obtaining the permit." *Id.*, Ex. 1 ¶ 16. However, Plaintiff asserts that "if busking were legal throughout Houston without burdensome permit requirements, he would busk again," but he will not without a permit because "he does not want to risk breaking the law." *Id.* at 6.

b. **Procedural Background**

Instead of breaking the law, Plaintiff sued Defendant City of Houston on January 15, 2020, challenging the constitutionality of the Busking Ordinance and the Permit Ordinances (collectively, the "Ordinances"). Doc. #1. Like his Motion for Summary Judgment, Plaintiff's Complaint argued that the Ordinances violate the First Amendment's Free Speech Clause. *Id.* On February 21, 2020, Defendant moved to dismiss based on Plaintiff's lack of standing and failure to state a claim. Doc. #9. U.S. District Court Judge Vanessa Gilmore granted Defendant's Motion to Dismiss (Doc. #19), and the U.S. Court of Appeals for the Fifth Circuit reversed, finding that Plaintiff had standing to sue (Doc. #36; *Barilla v. City of Hous.*, 13 F.4th 427 (5th Cir. 2021)). On

December 9, 2021, this case was reassigned to this Court upon Judge Gilmore's retirement. Doc. #43. On June 21, 2022, Plaintiff and Defendant filed their respective Motions for Summary Judgment. Doc. #47; Doc. #48.

## II.     Federal Rule of Civil Procedure 56

Summary judgment is proper where there is no genuine dispute of material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(a). A district court "may accept as undisputed the movant's version of the facts and grant [the] motion . . . when the movant has made a prima facie showing of entitlement to summary judgment." *Better Bags, Inc. v. Ill. Tool Works, Inc.*, 939 F. Supp. 2d 737, 740 (S.D. Tex. 2013). Additionally, "even where the underlying facts are undisputed, . . . the court must indulge every [r]easonable inference from those facts in favor of the party opposing the motion." *Am. Tel. & Tel. Co. v. Delta Commc'ns Corp.*, 590 F.2d 100, 101–02 (5th Cir. 1979). "Once the moving party fulfills this responsibility, the non-moving party must 'go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (cleaned up). However, summary judgment "may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Rogers v. Bromac Title Servs., LLC*, 755 F.3d 347, 350 (5th Cir. 2014). When parties have filed cross-motions for summary judgment, the court evaluates "each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).

### III. Analysis

Plaintiff moves for summary judgment, arguing that the Ordinances violate the First Amendment because they fail to survive strict and intermediate scrutiny. Doc. #47 at 8–9. Defendant moves for summary judgment on the basis that Plaintiff lacks standing to sue and that the Ordinances are constitutional because they satisfy intermediate scrutiny. *See* Doc. #48. For efficiency's sake, the Court will first address Defendant's standing argument, then the Court will address the parties' directly opposed summary judgment arguments regarding the Ordinances' constitutionality. The Court will analyze each Ordinance in turn.

#### a. Plaintiff's Standing

Defendant argues that Plaintiff lacks standing to bring this suit because he "did not have serious intent to engage in conduct proscribed by law." *Id.* at 12. Defendant claims that Plaintiff is a professional writer who applied for a street performance permit as research for an article he was writing on busking regulations, not to actually busk. *Id.* at 12–13.

Defendant previously challenged Plaintiff's standing in its Motion to Dismiss Plaintiff's Complaint filed in February 2020. Doc. #9 at 9–12. Judge Gilmore granted Defendant's Motion to Dismiss based on a finding that Plaintiff lacked standing (Doc. #19), but the Fifth Circuit reversed, holding that Plaintiff had a serious intent to busk. *See Barilla*, 13 F.4th at 432. Specifically, the Fifth Circuit stated, "[Plaintiff's] complaint asserts that he wants to busk on Houston's public streets. The complaint further alleges that [Plaintiff] previously applied for and received a busking permit and subsequently busked in the Theater District. *These factual allegations show [Plaintiff's] serious intent to busk.*" *Id.* (emphasis added). The Fifth Circuit already found that Plaintiff has standing. Defendant's argument that Plaintiff applied for the permit to prepare his article about the busking regulations does not change the Fifth Circuit's

4

holding—Plaintiff had a serious intent to busk, complied with the permit requirements, and busked in the Theater District. Defendant does not point to any legal authority suggesting otherwise. Therefore, based on the Fifth Circuit's finding that Plaintiff had standing, Defendant's argument that Plaintiff lacks standing is denied.

### b. The Constitutionality of the Busking Ordinance

#### 1. Level of Scrutiny

To determine the Busking Ordinance's constitutionality, the Court must first determine which level of scrutiny applies. Plaintiff primarily argues that the Busking Ordinance is subject to strict scrutiny because it is a content-based regulation that restricts street performers from communicating a particular message—soliciting gratuities. Doc. #47 at 8. Plaintiff argues that "the combination of street performance plus communicating a message that one is open to gratuities triggers the [Busking] Ordinance," thus "in order to determine whether the [Busking] Ordinance applies, the content of a person's speech must be examined." *Id.*

"[T]he First Amendment allows for regulations of solicitation . . . . To identify whether speech entails solicitation, one must read or hear it first. Even so, the Court has reasoned that restrictions on solicitation are not content based and do not inherently present 'the potential for becoming a means of suppressing a particular point of view,' so long as they do not discriminate based on topic, subject matter, or viewpoint." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471 (2022) (quoting *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981)). The Busking Ordinance at issue here generally prohibits the solicitation of gratuities regardless of the content, topic, or viewpoint of the street performance. *See* HOUS., TEX. CODE OF ORDINANCES, ch. 28, art. I, § 28-6. Therefore, the Busking Ordinance is not a content-based restriction and is not subject to strict scrutiny. *See Reagan Nat'l Advert. of*

5

*Austin, LLC*, 142 S. Ct. at 1474 ("Rather, it is regulations that discriminate based on 'the topic discussed or the idea or message expressed' that are content based." (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015)).

Next, Plaintiff argues that if the Busking Ordinance is content neutral, then the Court should apply intermediate scrutiny. *See* Doc. #47 at 9. A government's regulation of speech is deemed content neutral "so long as it is '*justified* without reference to the content of the regulated speech.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The Busking Ordinance is content neutral because its justifications are based on pedestrian and traffic safety, and protecting business owners from unwanted noise, not the content of speech. *See* Doc. #47 at 10; Doc. #52 ¶¶ 9–13; *Ward*, 491 U.S. at 791.

### 2. Intermediate Scrutiny of the Busking Ordinance

"When a content-neutral regulation applies to a traditional public forum 'such as sidewalks . . . , the regulation must be 'narrowly tailored to serve a significant government interest' and 'leave open ample alternative channels for communication of the information.'" *Lauder, Inc. v. City of Hous.*, 751 F. Supp. 2d 920, 929 (S.D. Tex. 2010) (quoting *Ward*, 491 U.S. at 791). It is well-settled that municipal governments have a significant interest in protecting pedestrian and traffic safety, particularly when regulating solicitations. *See Int'l Soc. for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494, 497 (5th Cir. 1989) ("The Supreme Court has recognized the substantial risk of disruption in crowd and traffic control that may be presented by solicitation of contributions, as compared to other forms of expression."); *see also Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507–08 (1981) (stating that traffic safety is a "substantial governmental goal"); *Lauder, Inc.*, 751 F. Supp. 2d at 931 ("The case law recognizes that a city's interest in the free and unobstructed use of sidewalks can be substantial."). It is also

6

settled law that protecting citizens from unwanted noise is a significant government interest. *See, e.g.*, *Ward*, 491 U.S. at 796; *City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 806 (1984). But the government must support its asserted interests with "some evidence." *Lauder, Inc.*, 751 F. Supp. 2d at 930.

Plaintiff claims that the Busking Ordinance fails to survive intermediate scrutiny because Defendant did not substantiate its significant government interests with evidence. Doc. #47 at 10. According to Plaintiff, Defendant's justifications for banning busking throughout Houston are: "(1) pedestrian and traffic safety and (2) protecting neighboring property owners from hearing things they might not want to hear." *Id.* Plaintiff argues that Defendant has not provided any evidence showing (1) "issues with traffic or pedestrian safety related to busking anywhere in Houston" currently or at the time the Busking Ordinance was adopted; or (2) "that it needs to protect property owners from noise." *Id.* at 10–12. Defendant argues that the legislative history of the "subject ordinances" show that Defendant had "substantial interests in aesthetics and promoting the free flow of traffic on sidewalks." Doc. #52 at 11.

The case law is clear that pedestrian and traffic safety and protecting citizens from unwanted noise are significant governmental interests. The issue here is whether Defendant put forth "some evidence" to support its asserted interests for the Busking Ordinance. *Lauder, Inc.*, 751 F. Supp. 2d at 930. In its Response, Defendant points to the legislative history of the "subject ordinances" as evidence of Defendant's interests, but the legislative history in the record is that of the Permit Ordinances, not the Busking Ordinance. *See* Doc. #52 at 7; Doc. #48, Ex. 3, Ex. 5, Ex. 6. The only evidence in the record regarding the significant government interests for the Busking Ordinance are excerpts from the deposition of the Director of Defendant's Planning and Development Department, Ms. Margaret Wallace Brown. *See* Doc. #47, Ex. 3. Ms. Brown

7

speculates that "the government interests include traffic administrative safety, the safety and welfare of those traveling through and around downtown" and "the effect it would have [on] neighboring properties and neighboring commuters." *Id.*, Ex. 3 at 22–23. But when asked about the facts that support the idea that busking on sidewalks interferes with traffic and pedestrian safety, Ms. Brown did not know of any. *Id.*, Ex. 3 at 24 ("Q: And what facts do you rely on to support the idea that busking on public sidewalks so interferes with this interest in traffic and pedestrian safety that it must be banned entirely? A: I don't personally have any facts associated with this . . . .").

There is nothing else in the record that provides evidentiary support for Defendant's asserted interests. Moreover, Defendant does not attempt to point the Court to any evidence to prove that its interests are significant. *See* Doc. #52 (Defendant's Response); Doc. #48 (Defendant's Motion for Summary Judgment). Defendant notes that *Lauder* is instructive to show that the "subject Ordinances are amply justified by [Defendant's] substantial interests in aesthetics and promoting the free flow of traffic on sidewalks." Doc. #52 at 11. But in *Lauder*, the court analyzed the evidence in the record, photographs and letters from businesses, to determine that the defendant's interests were significant. *Lauder, Inc.*, 751 F. Supp. 2d at 930–31. Because the record before this Court is devoid of any evidence to substantiate Defendant's significant interest in the Busking Ordinance, it fails to meet intermediate scrutiny and is unconstitutional. Based upon this finding, the Court need not analyze whether the Busking Ordinance is narrowly tailored or leaves open ample alternative channels.

    **c.**   **The Constitutionality of the Permit Ordinances**

Plaintiff argues that the Permit Ordinances are also unconstitutional. Doc. #47 at 16. Plaintiff asserts that the Permit Ordinances fail to meet strict and intermediate scrutiny because

Defendant (1) has not offered any evidence to substantiate its asserted interests and (2) the permit requirements are not narrowly tailored. *Id.*

### 1. Level of Scrutiny

As noted, a government's regulation of speech is deemed content neutral "so long as it is '*justified* without reference to the content of the regulated speech.'" *Ward*, 491 U.S. at 791; *see also Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. at 1474 ("Rather, it is regulations that discriminate based on 'the topic discussed or the idea or message expressed' that are content based." (quoting *Reed*, 576 U.S. at 171)). Defendant's justifications for the Permit Ordinances were the "aesthetics of promoting a 'vibrant,' 'hospitable,' and 'enjoyable' atmosphere downtown 'to further the economic and cultural health and welfare' of the city" and to promote "the free flow of traffic on sidewalks." Doc. #52 at 9, 11. Based on these justifications, the Permit Ordinances are content-neutral regulations and subject to intermediate scrutiny.

### 2. Intermediate Scrutiny of the Permit Ordinances

#### i. Significant Government Interests

As previously noted, Defendant's interests in the Permit Ordinances are the aesthetics of downtown and the free flow of traffic on sidewalks. Doc. #52 at 11. Plaintiff argues that Defendant fails to put forth evidence showing that these are significant government interests, and that the Permit Ordinances' requirements "sweep too broadly while failing to advance [Defendant's] interests." *See* Doc. #47 at 17–19. Defendant points to the legislative history of the Permit Ordinances as evidence substantiating that its interests are significant. Doc. #48 at 13–14; Doc. #52 at 7.

A government's interest in aesthetics and the flow of traffic on sidewalks have both been recognized as significant. *See Lauder, Inc.*, 751 F. Supp. 2d at 930 ("[T]he regulations are

9

necessary to serve aesthetics and public safety. Both are recognized as legitimate interests for municipal governments."); *Metromedia, Inc.*, 453 U.S. at 507–08 ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals."). But again, "some evidence" is required to substantiate that government interests are significant. *Lauder, Inc.*, 751 F. Supp. 2d at 930.

As to its interests in aesthetics, Defendant notes that it worked with community organizations and determined that the Theater District was the best location for the Permit Ordinances because "part of the rationale in creating the [T]heater [D]istrict was to create a very walkable area where Houstonians could . . . enjoy the theater, enjoy a dinner before the theater, enjoy a very vibrant part of Houston" and having performers would "enhance the image of the Theater District and downtown." Doc. #52 at 8 (first quoting Doc. #52, Ex. 4 at 8; and then quoting Doc. #52, Ex. #3 at 9). As to its interests in traffic and pedestrian safety, Defendant "considered public safety concerns of vehicle and pedestrian congestion, and the placement of vendors' and performers' equipment and materials on sidewalks." *Id.* Specifically, the Permit Ordinances authorize Defendant to review the equipment, instruments, or props of vendors and performers to ensure they "will not pose a hazard to vehicular or pedestrian traffic." *Id.* at 10 (quoting Doc. #52, Ex. 6 at 7). The Court finds that the evidence in the record supports Defendant's significant interests.

### ii. Narrowly Tailored

Plaintiff next argues that the Permit Ordinances are not narrowly tailored to Defendant's expressed interests. Doc. #47 at 18. Plaintiff notes that "Defendant has not shown how a performer's intent to collect money impacts traffic safety or sidewalk congestion" such that a large group of performers may "gather without first securing a permit so long as they don't ask for

money" but single performers like Plaintiff "would be required to seek a permit simply because [they] plan[] to solicit tips." *Id.* Therefore, Plaintiff argues, the Permit Ordinances are not narrowly tailored because they burden more speech than necessary. *Id.*

For a regulation to be narrowly tailored, it must "promote a substantial government interest that would be achieved less effectively absent the regulation." *United States v. Albertini*, 472 U.S. 675, 689 (1985). The regulation must target and eliminate "no more than the exact source of evil it seeks to remedy." *Knowles v. City of Waco*, 462 F.3d 430, 434 (5th Cir. 2006). The validity of a narrowly tailored regulation "does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests or the degree to which those interests should be promoted." *Ward*, 491 U.S. at 799. Instead, "[i]f 'a substantial portion of the burden on speech does not serve to advance' the ordinance's stated goals, then the ordinance is not narrowly tailored." *Knowles*, 462 F.3d at 434 (quoting *Ward*, 491 U.S. at 799).

Generally, a permit requirement that applies to one or two people, such as the Permit Ordinances, is not narrowly tailored to serve a significant government interest because it is unlikely that such a small group of people will substantially interfere with the government's interests. *See Knowles*, 462 F.3d at 436 ("Other circuits have held, and we concur, that ordinances requiring a permit for demonstrations by a handful of people are not narrowly tailored to serve a significant government interest."). The Permit Ordinances prohibit "*any person* who is not a permittee" from "conduct[ing] sidewalk performances in the [Theater District]." Doc. #47, Ex. 2 at 3 (HOUS., TEX. CODE OF ORDINANCES, ch. 40, art. XI, § 40-262). Yet Defendant does not point to any evidence showing how such a regulation that requires *all* street performers, even single performers, to secure a permit before performing for gratuities in the Theater District is narrowly tailored to achieve its

11

interests in enhancing the aesthetics of downtown or ensuring pedestrian and traffic safety. *See Int'l Soc. for Krishna Consciousness of New Orleans*, 876 F.2d at 498 (relying on testimony from a city traffic engineer regarding the dangers of soliciting from vehicles when determining that an ordinance prohibiting soliciting funds from occupants of cars is narrowly tailored). As Plaintiff notes, Defendant also has not shown "that a street performer who asks for tips causes any more congestion or safety issues than one who does not." Doc. #47 at 18. As it stands, the Permit Ordinances, together with the Busking Ordinance, would allow a large group to perform on the sidewalk without a permit as long as the group does not solicit tips, but a single performer seeking tips must have a permit. Presumably, the larger group will interfere with traffic and pedestrian safety more than one performer. Yet Defendant does not attempt to address this disparity in treatment. *See* Doc. #48; Doc. #52 (neither addresses how the Permit Ordinances are narrowly tailored). Accordingly, as to sidewalk performers, the Permit Ordinances are unconstitutional because they are not narrowly tailored.

### d. Severance

Finally, Defendant requests that if the Ordinances are found unconstitutional, then the unconstitutional parts be severed. Doc. #48 at 18. The Busking Ordinance is unconstitutional in its entirety; thus, no part of that Ordinance can be severed. However, as to the Permit Ordinances, only the portions pertaining to street performances are unconstitutional and shall be severed accordingly.

### IV. Conclusion

For the foregoing reasons, Defendant's Busking Ordinance is unconstitutional because it is not supported by a significant government interest. Defendant's Permit Ordinances, as to street performers, are unconstitutional because they are not narrowly tailored to achieve a significant

government interest. Therefore, Plaintiff's Motion for Summary Judgment is GRANTED in part, and Defendant's Motion for Summary Judgment is DENIED in part.

It is so ORDERED.

DEC 2 0 2022
Date

The Honorable Alfred H. Bennett
United States District Judge

13